UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| | |
|---|---|
| Case No. | CV 16-3474 DSF (JPRx) |
| Date | 12/12/16 |
| Title | Young America's Foundation, et al. v. William Covino, et al. |

| Present: The Honorable | DALE S. FISCHER, United States District Judge |
|---|---|

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs | Attorneys Present for Defendants |
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order GRANTING in part and DENYING in part Defendants Covino, Wada-McKee, Chavez, and Ortiz's Motion to Dismiss (Dkt. 73), and GRANTING Defendants Abdullah, Borjon, Weide, Bettcher, and Teixeira's Motion to Dismiss (Dkt. 74) and Motion to Strike (Dkt. 75)

## I. INTRODUCTION

Defendants William Covino, Nancy Wada-McKee, Lisa Chavez, John Ortiz, Melina Abdullah, Luz Borjon, Robert Weide, Talia Mae Bettcher, and Steve Teixeira move to dismiss Plaintiffs Young America's Foundation, CSULA Young Americans for Freedom, Ben Shapiro, Mark Kahanding, and Olivia Karapanian's First Amended Complaint alleging violations of the First and Fourteenth Amendments. Defendants Abdullah, Borjon, Weide, Bettcher, and Teixeira also move to strike Plaintiffs' state law claims.

## II. FACTUAL BACKGROUND

CSULA Young Americans for Freedom (YAF) is a student group at California State University – Los Angeles (the University). FAC at ¶ 25. YAF is affiliated with Young America's Foundation (the Foundation), a non-profit organization. Id., ¶¶ 24, 26.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

The Foundation was hosting a speaking tour across college campuses featuring Ben Shapiro, a political commentator, and YAF contacted the Foundation requesting that the University be included on Shapiro's tour. Id., ¶¶ 29; 144-45. The Shapiro event was scheduled for February 2016. Id. at ¶ 147. YAF began promoting the event on social media. Id. at ¶ 155. Plaintiffs allege Abdullah and Weide, both professors at the University, also began posting on social media about the Shapiro event. Id., ¶¶ 156, 240, 242-50.

YAF obtained approval from the University to host the Shapiro event in the University Student Union Theatre. Id. at ¶ 150. As part of this process, Ortiz, Director of Operations of the University Student Union, completed a Public Safety Work Request, which required YAF to pay the University $621.50 in security fees. Id., ¶¶ 48, 157-58. This fee was assessed based on the University's Facilities Use Policy, which allowed fees to be set based on whether the event was deemed "controversial," and set forth general staffing guidelines for events the University classified as "controversial." Id., ¶¶ 74-95, Ex. 1. Chavez, Covino, and Wada-McKee are University Administrators responsible for administering certain University policies, including the Facilities Use Policy. Id., ¶¶ 32-47.

The Public Safety Work Request for the Shapiro event explicitly identified Shapiro's topics and views as "controversial." Id. at ¶ 159. In response to this assessment, YAF's counsel sent a letter to the University claiming the fee was unconstitutional and demanding it be rescinded. Id. at ¶ 163, Ex. 13. The University agreed to rescind the fee because it did not have enough time to research its propriety. Id. at ¶ 164, Ex. 14.

A few days prior to the planned event, Covino, the University President, informed Kahanding, the President of YAF, that the Shapiro event would be rescheduled so that Shapiro could appear as part of a group of speakers with differing viewpoints on diversity. Id., ¶¶ 32, 170-71. Despite this notification from Covino, YAF, the Foundation, and Shapiro planned to continue with the event. Id. at ¶ 172. Covino then issued a press release stating that he disagreed with Shapiro's views, but would make every effort to ensure a climate of safety and security. Id. at ¶ 173, Ex. 16.

On the day of the event, protestors gathered in the Student Union. Id., ¶¶ 175, 177-79. Plaintiffs allege that Abdullah, Borjon, Weide, Bettcher, and Teixeira (the Faculty) organized and took part in this protest. Id. at ¶ 12. Plaintiffs allege the protestors, including the Faculty, blocked access to and exit from the theatre. Id. Protestors, including some of the Faculty, linked arms to do so. Id., ¶¶ 179, 260. When YAF began bringing people through a back door, protestors soon blocked entrance to that door, as well. Id. at ¶ 188-89. University officers failed to take any action in response, as Covino and Wada-McKee had instructed them not to interfere with the protestors. Id. at ¶ 186.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

MEMORANDUM

Kahanding was able to enter the theatre, but unable to exit after the conclusion of the speech. Id. at ¶ 264. Karapanian, another YAF member, was unable to enter the theatre. Id., ¶¶ 190, 195-97. After the Shapiro event, Faculty and Administrators continued to discuss what occurred online and on campus. See Id., ¶¶ 225-239, 267-68. This included statements by Covino regarding his instruction to police not to interfere with students' right to protest and comments about student-created benchmarks, priorities, or criteria that could be implemented in the future. Id., Ex. 21.

Plaintiffs filed an initial complaint alleging violations of their First and Fourteenth Amendment rights, and state law claims. Dkt. 1. The University then revised its Facilities Use Policy. See FAC, ¶¶ 96-99, Ex. 4. The revision removed the reference to "controversial activity" and corresponding fee guidelines, stating instead that security would be considered on a "case-by-case basis." Id. In moving to dismiss the initial complaint, the Administrators included a declaration from Chavez, stating that this revised policy would assess fees based only on factors not related to viewpoint. Id. at ¶ 101. In opposing this motion, Plaintiffs objected to this revised policy. Id. at ¶ 106. Finally, in their reply brief, the Administrators attached the Third Security Fees Policy, which incorporated the statements from Chavez's prior declaration. Id., ¶¶ 107-116. Plaintiffs sought and were granted permission to amend their complaint to object to the Third Security Fees Policy. Id.

Covino, Wada-McKee, Chavez, and Ortiz (the Administrators) move to dismiss the FAC. Dkt. 73. Abdullah, Bettcher, Weide, Borjon, and Teixeira (the Faculty) move separately to dismiss the FAC, and bring an anti-SLAPP motion to strike the state law claims. Dkts. 74, 75.

### III. DISCUSSION

**A. Claims 1 & 2 Against Administrators: Security Fees Policies**

Administrators argue the Court lacks jurisdiction to hear Claims 1 and 2. The plaintiff bears the burden of establishing subject matter jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Motions to dismiss for lack of subject matter jurisdiction are governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure. A Rule 12(b)(1) jurisdictional challenge can be facial or factual. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial challenge, the moving party asserts that the allegations in the complaint are "insufficient on their face" to establish federal jurisdiction. Id. "Whether subject matter jurisdiction exists therefore does not depend on resolution of a factual dispute, but rather on the allegations in [the] complaint." Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). The court accepts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

the allegations in the complaint as true, and the plaintiff need not present evidence outside the pleadings. Id. By contrast, in a factual challenge, the moving party "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039. Where the moving party makes a factual challenge by presenting affidavits or other evidence, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Wolfe, 392 F.3d at 362 (citation and internal quotation marks omitted). In resolving the jurisdictional issue, the court does not accept the allegations in the complaint as true. Safe Air for Everyone, 373 F.3d at 1039.

Plaintiffs seek declaratory and injunctive relief as to the Third Security Fees Policy, arguing it violates their – and others' – rights under the First and Fourteenth Amendments. The Administrators argue Plaintiffs lack standing to pursue Claims 1 and 2, or that such claims are moot in light of their revisions.

"To establish standing under Article III, a plaintiff must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Kaahumanu v. Hawaii, 682 F.3d 789, 796 (9th Cir. 2012). The parties here dispute "injury in fact."

"Plaintiffs who challenge a permitting system are not required to show that they have applied for, or have been denied, a permit. Plaintiffs must only have declined to speak, or have modified their speech, in response to the permitting system." Kaahumanu, 682 F.3d at 796. Plaintiffs allege they are planning activities for the Fall 2016 semester, they fear being assessed fees on an improper basis, they cannot afford fees, and they cannot conduct on-campus events without paying fees. See FAC, ¶¶ 116, 166-68. This is insufficient to meet their burden. See Kaahumanu, 682 F.3d at 796; see also Lopez v. Candaele, 630 F.3d 775, 785-87 (9th Cir. 2010) (mere allegations of subjective chill are not akin to claim of specific present objective harm or threat of specific future harm; plaintiff must show realistic danger of sustaining a direct injury as a result of statute's operation and enforcement where threat of injury must be credible rather than speculative); cf. Preminger v. Peake, 552 F.3d 757, 763 (9th Cir. 2008) (standing analysis focuses on the harm to the plaintiff; merits focuses on government's conduct).[1] Plaintiffs

---

[1] Indeed, Plaintiffs allege an event was planned for October 4. FAC at ¶ 166. The FAC was filed more than a week later and Plaintiffs' briefs were filed more than a month later. Nowhere – including at the hearing – did Plaintiffs indicate whether the event proceeded or whether fees were assessed improperly under the Third Securities Fee Policy, in place since August 26, 2016. See FAC at ¶ 108. Since the initial Complaint was filed – alleging Plaintiffs were "planning

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

lack standing to bring their facial and overbreadth challenges for the same reasons. See Kaahumanu, 682 F.3d at 802; Lopez, 630 F.3d at 785.[2]

Plaintiffs' claims under the previous policies, however, may entitle them to nominal damages, and so are not mooted by the revised policies. See Bernhardt v. Cty. of Los Angeles, 279 F.3d 862, 872 (9th Cir. 2002); see also Jacobs v. Clark Cty. Sch. Dist., 526 F.3d 419, 425–26 (9th Cir. 2008). The Administrators argue Plaintiffs lack standing to challenge the former policies because they never paid the security fees. The Ninth Circuit has noted that for standing "[t]he injury may be minimal." Preminger, 552 F.3d at 763 (citing holding that "an identifiable trifle" is sufficient to establish standing).

Accepting Plaintiffs' allegations as true, the Court at this stage finds Plaintiffs have standing to bring a non-moot claim for at least nominal damages. Plaintiffs allege they were initially assessed a fee under the former policy as a result of their speech being labeled controversial and were forced to send a letter, through their counsel, before the fee was rescinded. See FAC, ¶¶ 157-64, Exs. 12-14. Until the fee was rescinded, Plaintiffs faced a realistic danger of sustaining a direct injury as a result of the policy's operation and enforcement that was credible, rather than speculative. YAF was forced to divert resources to enlist counsel to write a letter on its behalf – or risk being charged a fee based on the "controversial" nature of its speech in furtherance of its purpose "to bring students together to advocate for the ideas of limited government, individual freedom, free enterprise, traditional values, and a strong national defense." FAC, ¶¶ 25, 163; cf. Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1018 (9th Cir. 2013) ("An organization has direct standing to sue when it shows a drain on its resources from both a diversion of its resources and frustration of its mission. An organization cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all. It must instead show that it would have suffered some other injury if it had not diverted resources to

---

several activities for the fall 2016 semester" no further details regarding their intended – but threatened – speech activities have been alleged. See Dkt. 1 at ¶ 130; cf. Lopez, 630 F.3d at 787-88 ("some day" intentions do not support actual or imminent injury required). Instead, the Administrators have indicated they will not assess fees based on viewpoint and the policies do not authorize fees being assessed based on whether an event involves "controversial" activity. See First Chavez Decl., ¶¶ 3-4; FAC, Ex. 5; Second Chavez Decl. at ¶ 2; cf. Canatella v. State of California, 304 F.3d 843, 852-54 & n.14 (9th Cir. 2002).

[2] Because Plaintiffs argue that standing for Claim 2 mirrors the standards under Claim 1, see Opp. to Adm'rs Mot. at 11, Plaintiffs have also not met their burden of demonstrating they have standing to challenge the Third Security Fees Policy under Claim 2.

counteracting the problem.") (internal quotation marks, citations, and alterations omitted).

For these reasons, Administrators' motion to dismiss Claims 1 and 2 is GRANTED in part and DENIED in part.[3]

## B. Claims 3 & 4 Against Administrators: Shapiro Event

### 1. Claim 3

Claim 3 against the Administrators is barred under <u>DeShaney v. Winnebago Cty. Dep't of Soc. Servs.</u>, 489 U.S. 189, 195 (1989) ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.").

Plaintiffs argue <u>DeShaney</u> does not apply because they allege violations of their First Amendment rights. But the First Amendment similarly limits a state's power to deprive individuals of free speech rights (rather than creating an affirmative obligation to ensure such rights are not harmed through other means). <u>Cf. Wallace v. Jaffree</u>, 472 U.S. 38, 49 (1985) ("But when the Constitution was amended to prohibit any State from depriving any person of liberty without due process of law, that Amendment imposed the same substantive limitations on the States' power to legislate that the First Amendment had always imposed on the Congress' power."). Further, although framed as a claim under the First Amendment, the crux of Claim 4 raises a question of substantive due process – challenging a failure to protect by failing to act (i.e., failing to enforce University policies and state laws, and remove the protestors). <u>Compare</u> <u>Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico</u>, 457 U.S. 853, 866-67 (1982) (discussing state's inability to contract spectrum of information when addressing whether First Amendment limits state's power *to remove or silence information itself* – namely, a

---

[3] However, to the extent Plaintiffs seek damages against the Administrators in their official capacities, as to these and other claims, such claims are dismissed with prejudice. <u>Ex Parte Young</u>, 209 U.S. 123, 159-160 (1908); <u>see also</u> <u>Braunstein v. Arizona Dep't of Transp.</u>, 683 F.3d 1177, 1188 (9th Cir. 2012) (well-established that sovereign immunity precludes § 1983 damages claims against state actors in their official capacity).

school board removing books from school libraries). Such a claim is foreclosed by DeShaney. See Majors v. City of Oakland, No. C 05-00061 CRB, 2005 WL 2216955, at *5 (N.D. Cal. July 25, 2005). The post-DeShaney cases cited by Plaintiffs – purporting to show that DeShaney would not apply to the alleged instructions not to interfere with protestors' rights – are unpersuasive. See Adm'rs Reply at 6-7; cf. Regan v. Taxation With Representation of Washington, 461 U.S. 540, 549-50 (1983) ("[A]lthough government may not place obstacles in the path of a person's exercise of freedom of speech, it need not remove those not of its own creation.") (internal quotation marks and alterations omitted).[4]

### 2. Claim 4

Plaintiffs have also failed to state Claim 4 against the Administrators. "The plaintiff in a § 1983 claim alleging a violation of equal protection must prove that the defendant acted in a discriminatory manner and that the discrimination was intentional." Fed. Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991). Under the first element, the claimant must allege that similarly situated individuals were treated differently. See Rosenbaum v. City & Cty. of San Francisco, 484 F.3d 1142, 1152–53 (9th Cir. 2007); see also Arizona Dream Act Coal. v. Brewer, 818 F.3d 901, 908 (9th Cir. 2016) ("To prevail on an Equal Protection claim, plaintiffs must show that a class that is similarly situated has been treated disparately. The first step in equal protection analysis is to identify the state's classification of groups. The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified.") (internal quotation marks and citations omitted).

While Plaintiffs allege Shapiro and YAF are similarly situated to non-students invited to campus, and that Karapanian and Kahanding are similarly situated to other students, FAC at ¶ 348, Plaintiffs fail to allege differential treatment as compared to these similarly situated individuals. See Lacey v. Maricopa Cty., 693 F.3d 896, 920 (9th Cir. 2012) ("[T]o state a claim, [plaintiff] need only allege some facts, either anecdotal or statistical, demonstrating that similarly situated defendants could have been prosecuted, but were not.") This failure dictates dismissal of Plaintiffs' equal protection claim. Ventura Mobilehome Cmtys. Owners Ass'n v. City of San Buenaventura, 371 F.3d 1046, 1055 (9th Cir. 2004) (dismissing equal protection claim where plaintiff had not, "[a]side

---

[4] The case DeShaney cites for such an exception – as evidencing a different violation, under the Equal Protection Clause – contained examples of similarly situated groups being treated differently. See DeShaney, 489 U.S. at 197 n.3 (citing Yick Wo v. Hopkins, 118 U.S. 356, 374 (1886)). As discussed below, Plaintiffs do not state such allegations here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

from conclusory allegations[,] identified other similarly situated property owners or alleged how they are treated differently").[5]

### 3. Qualified Immunity

Claims 3 and 4 seeking damages against the Administrators in their personal capacities are also barred by qualified immunity. Qualified immunity is more than a mere defense at trial; it is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Because the benefit of immunity is effectively lost if the case erroneously goes to trial, the Supreme Court repeatedly has stressed the importance of resolving immunity questions at the earliest possible stage of the litigation. Saucier v. Katz, 533 U.S. 194, 200-01 (2001). To do so, courts engage in a two-prong inquiry.

First, viewing the facts in the light most favorable to the plaintiff, the court determines whether the official's conduct violated a federal right. Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014) (per curiam); Saucier, 533 U.S. at 201.

Second, the court determines whether the right was "clearly established" at the time the violation occurred. Tolan, 134 S. Ct. at 1866. The state of the law must have been such that the officials had fair warning that their conduct was unconstitutional. Id. A prior case need not be "on all fours," but the contours of the right must be sufficiently definite so that a reasonable official would have understood he was violating the plaintiff's constitutional rights. City & Cnty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1774 (2015); Anderson v. Creighton, 483 U.S. 635, 640 (1987). A "clearly established" right cannot be defined generally. See Brouseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam). The inquiry must be made "in light of the specific context of the case, not as a broad general proposition." Id. (internal quotation marks omitted).

---

[5] Plaintiffs' reliance on Harper v. Va. State Bd. of Elections, 383 U.S. 663, 668-670 (1966), which they argue establishes a different test regarding fundamental rights, is unpersuasive. 383 U.S. at 668 ("In this context – that is, as a condition of obtaining a ballot – requirement of fee paying causes an 'invidious' discrimination"). Claim 4 against the Administrators objects to selective enforcement – the alleged decision to instruct police not to interfere with the protestors' rights, which resulted in interference with the event. See TAC, ¶¶ 351-364 ("refusal to enforce University policies and state and local laws"). As pled, Rosenbaum's requirement of discriminatory effect is more applicable than any rule from Harper, which held more narrowly that a poll tax was invidiously discriminatory (and so a per se violation of the Equal Protection Clause).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

The Court may engage the two prongs of the qualified immunity test in either order. Pearson v. Callahan, 555 U.S. 223, 236 (2009). "[A] Rule 12(b)(6) dismissal is not appropriate unless [the Court] can determine, based on the complaint itself, that qualified immunity applies." Groten v. California, 251 F.3d 844, 851 (9th Cir. 2001).

Accepting their allegations as true, Plaintiffs' First Amendment claim is based on certain Administrators ordering University police "not to move protestors away from the theater doors, which prevented students and the public from attending the speech." FAC at ¶ 37; see also id., ¶¶ 185-86 ("University police officers did not take any action to stop the protestors from blocking access to the Free Speech Event or to otherwise assist interested individuals in gaining access to the event"); id. at ¶ 191 ("University police officers, pursuant to the orders of [some of the Administrator Defendants], did not take any action to stop the protestors from verbally and physically assaulting Karapanian or blocking the back doors of the Student Union"). Plaintiffs allege this action violated a clearly established right to have police officers not favor certain speech, not ratify and effectuate a heckler's veto, and not join a mob intent on suppressing ideas. Opp. to Adm'rs Mot. at 23-24.

Under the heckler's veto doctrine, "the government may not *regulate speech* on the grounds that it will cause its hearers anger or discomfort. If speech provokes wrongful acts on the part of hecklers, the government must deal with those wrongful acts directly; it may not avoid doing so *by suppressing the speech*." Santa Monica Nativity Scenes Comm. v. City of Santa Monica, 784 F.3d 1286, 1292–93 (9th Cir. 2015) (citations omitted) (emphases added).

The doctrine is not on point. Compared to the cases Plaintiffs cite, the officers here did not clearly engage in a heckler's veto and suppress Plaintiffs' speech. See Bible Believers v. Wayne Cty., Mich., 805 F.3d 228, 236 (6th Cir. 2015) (plaintiffs alleged officers "eventually silenced [them] by kicking them out and requiring them to leave the Festival grounds"); see also Glasson v. City of Louisville, 518 F.2d 899, 902 (6th Cir. 1975) (officer took plaintiff's sign "and tore it up"). Plaintiffs fail to provide law clearly establishing that, when protestors block access to a speaker and officers fail to remove those protestors who are alleged to be violating state law, the speaker, audience members, and potential audience members' First Amendment rights are violated.

Instead, clearly established law indicates such situations call for a nuanced balancing of rights. See Collins v. Jordan, 110 F.3d 1363, 1371–72 (9th Cir. 1996) ("The generally accepted way of dealing with unlawful conduct that may be intertwined with First Amendment activity is to punish it after it occurs, rather than to prevent the First Amendment activity from occurring in order to obviate the possible unlawful conduct."). Cases cited by Plaintiffs are in accord. See Bible Believers, 805 F.3d at 252 ("In a balance between two important interests—free speech on one hand, and the state's power

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

to maintain the peace on the other—the scale is heavily weighted in favor of the First Amendment."). Plaintiffs point to case law establishing that, when one group's exercise of First Amendment rights interferes with another group's, officers may not take *affirmative actions* to *silence* one group (e.g., removing the speaker or ripping up a sign). But Plaintiffs point to no case law clearly establishing how officers must balance these competing interests, and how the Administrators' directive and officers' actions at the Shapiro event constituted a violation of any clearly established right.

For these reasons, the Administrators are entitled to qualified immunity for Claim 3 in their individual capacities.[6]

## C. Claims 3 & 4 Against Faculty: Shapiro Event

### 1. Official Capacities

Plaintiffs seek only equitable relief against the Faculty in their official capacities. See FAC, ¶¶ 344, 369.[7] "Although sovereign immunity bars money damages and other retrospective relief against a state or instrumentality of a state, it does not bar claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law. The [Ex Parte] Young doctrine allows individuals to pursue claims against a state for prospective equitable relief, including any measures ancillary to that relief. To bring such a claim, the plaintiff must identify a practice, policy, or procedure that animates the constitutional violation at issue." Arizona Students' Ass'n v. Arizona Bd. of Regents, 824 F.3d 858, 865 (9th Cir. 2016) (citations omitted).

Here, the Faculty's alleged *failure* to comply with various university policies is the basis for Claims 3 and 4 against them in their official capacities. See Opp. to Faculty Mot. at 10-11 (citing FAC, ¶¶ 207, 324-369). Plaintiffs fail to allege facts sufficient to show that any state policy or custom caused the alleged violation of their First and Fourteenth Amendment rights, and so fail to state these claims. See Hafer v. Melo, 502 U.S. 21, 25 (1991) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("On the

---

[6] For similar reasons, the Administrators are also entitled to qualified immunity under Claim 4, as Plaintiffs again fail to point to cases demonstrating police are on fair notice they must undertake certain behavior in these circumstances. See Opp. to Adm'rs Mot. at 25 (citing cases that did not deal with competing First Amendment interests); see also Collins, 110 F.3d at 1371–72.

[7] To the extent Plaintiffs seek damages against the Faculty in their official capacities, those claims are dismissed with prejudice. Ex Parte Young, 209 U.S. at 159-160.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law.") (citations and internal quotation marks omitted) (emphasis in original)).[8]

For this reason, and for the reasons discussed above regarding the Administrators, Claims 3 and 4 against the Faculty in their official capacities are DISMISSED.

### 2. Individual Capacities

#### a. Under Color of State Law

Plaintiffs seek only damages against the Faculty in their individual capacities. See FAC, ¶¶ 344, 369. "The standard used to evaluate a motion to dismiss is a liberal one[.] However, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted). Here, the FAC contains only conclusory allegations that the Faculty organized and participated in the protest, including blocking access to the theatre.

Even assuming Plaintiffs have sufficiently alleged the Faculty's participation in the protest, Plaintiffs' claims under Section 1983 fail for another reason. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (U.S. 1988). "The defendants' conduct was engaged in under color of state law if they were clothed with the authority of the state and were purporting to act thereunder, whether or not the conduct complained of was authorized or, indeed, even if it was proscribed by state law." Marshall v. Sawyer, 301 F.2d 639, 646 (9th Cir. 1962).

Claims 3 and 4 against the Faculty in their individual capacities are based on the Faculty blocking access to the event, which Plaintiffs allege violated the First Amendment rights of those unable to enter the theatre, and those within the theatre. See

---

[8] While "official liability may also be imposed where a first-time decision to adopt a particular course of action is directed by a governmentally authorized decisionmaker," there is no indication that applies here to the Faculty. Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991).

Opp. to Faculty Mot. at 15.  But Plaintiffs fail to allege these acts were committed by the Faculty acting under color of state law, as opposed to as part of a personal pursuit.  McDade v. West, 223 F.3d 1135, 1140 (9th Cir. 2000) ("The acts, therefore, must be performed while the officer is acting, purporting, or pretending to act in the performance of his or her official duties."); see also Screws v. United States, 325 U.S. 91, 111 (1945) ("acts of officers in the ambit of their personal pursuits are plainly excluded").

Plaintiffs allege in a conclusory manner that, at all relevant times, all Defendants acted under color of a statute, regulation, custom, or usage.  See FAC, ¶¶ 18, 269; see also Opp. at 4-5 (seeming to argue state employment and violation of university policies is sufficient).  This is insufficient; absent factual allegations demonstrating the Faculty acted under color of state law, Plaintiffs have failed to state their claims.  See Naffe v. Frey, 789 F.3d 1030, 1033-39 (9th Cir. 2015) (noting that "a bare claim of state action does not withstand a Rule 12(b)(6) motion" in affirming dismissal where plaintiff failed to allege facts to support bald assertion that deputy district attorney acted under color of law when posting about plaintiff on personal blog and Twitter); cf. Cox v. Hellerstein, 685 F.2d 1098, 1099 (9th Cir. 1982) (in Section 1983 claim, "action under color of law is a jurisdictional requisite").

### b. Qualified Immunity

Even if Plaintiffs could amend their pleadings to state a claim under the First and Fourteenth Amendments, the claims must be dismissed because the Faculty are entitled to qualified immunity.

Plaintiffs state generally that content-based regulations violate the First Amendment.  Opp. to Faculty Mot. at 17 (citing Rosenberger v. Rector & Visitors of Univ. of Virginia, 515 U.S. 819, 834 (1995), which challenged a university regulation that denied funding to a publication because it promoted religion).  Such broad propositions are insufficient to allege a clearly established right for the purpose of defeating qualified immunity.  See Brouseau, 543 U.S. at 198.  Plaintiffs argue there is a well-established right that, during a protest, individuals employed as professors or other faculty at a state university may not favor one side over the other, but instead must take action to protect those exercising their constitutional rights from violence.  See Opp. to Faculty Mot. at 15-18.  Plaintiffs rely on cases involving police action without explaining how they relate to non-police state actors.

Even in cases involving police, there is authority that the proper action would be *not* to intervene or dispel the crowds gathered at the Student Union.  See Collins, 110 F.3d at 1371–72 ("[E]njoining or preventing First Amendment activities before demonstrators have acted illegally or before the demonstration poses a clear and present

danger is presumptively a First Amendment violation. The generally accepted way of dealing with unlawful conduct that may be intertwined with First Amendment activity is to punish it after it occurs, rather than to prevent the First Amendment activity from occurring in order to obviate the possible unlawful conduct.") (citations omitted). Although Plaintiffs point to clearly established law that a police officer may not detain an individual as punishment for insults, and that police officers must *protect* rather than *completely silence* one party when there are two competing parties both exercising First Amendment rights, they do not point to clearly established law dictating how non-officer state actors may exercise their own rights, while still upholding each party's rights, in this specific scenario. Cf. C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist., 654 F.3d 975, 986-88 (9th Cir. 2011) (affirming qualified immunity for high school teacher who made comments about religion during class noting "there has never been any reported case holding that a teacher violated the Establishment Clause by making statements in the classroom that were allegedly hostile to religion").

Plaintiffs' attempts to point to the Faculty's violations of clearly established University policies are of no avail; such violations do not support a claim under § 1983. See West v. Atkins, 487 U.S. at 48 ("plaintiff must allege the violation of a *right secured by the Constitution and laws of the United States . . .*") (emphasis added).

For the reasons stated, Claims 3 and 4 against the Faculty are DISMISSED.

### D. Claims 5 & 6 Against Faculty: Anti-SLAPP

California Code of Civil Procedure § 425.16 permits a defendant to bring a special motion to strike a lawsuit where it qualifies as a "strategic lawsuit against public participation" (SLAPP). Siam v. Kizilbash, 130 Cal. App. 4th 1563, 1569-70 (2005).

In analyzing an anti-SLAPP motion, a court must first decide "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 819 (2011) (internal quotation marks omitted). Under the statute, an

> act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of

public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. Code § 425.16(e). "In deciding whether the 'arising from' requirement is met, a court considers the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." City of Cotati v. Cashman, 29 Cal. 4th 69, 79 (2002) (internal quotation marks omitted).

"If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim." Oasis W. Realty, 51 Cal. 4th at 819-20 (internal quotation marks omitted). To meet this requirement, "the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." Id. at 820 (internal quotation marks omitted). Courts consider the pleadings and supporting and opposing affidavits, but do not make credibility determinations or compare the weight of the evidence. Id. Instead, courts "accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." Id. (internal quotation marks and brackets omitted). The anti-SLAPP motion must be granted "if the plaintiff fails to produce evidence to substantiate his claim or if the defendant has shown that the plaintiff cannot prevail as a matter of law." Siam, 130 Cal. App. 4th at 1570; see also Oasis W. Realty, 51 Cal. 4th at 820.

### 1. Protected Activity

The conduct that forms the basis of Plaintiffs' state law claims centers around the Faculty's presence at the Student Union where people had gathered to protest Ben Shapiro, protests which allegedly blocked entrance to and exit from the theatre where Shapiro was speaking. See Opp. to Faculty Mot. Strike at 15. In light of the pleadings and submitted affidavits, the Faculty have made a prima facie showing that the state law causes of action are based on their presence at and/or participation in a protest, acts constituting "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(4); see also Lam v. Ngo, 91 Cal. App. 4th 832, 845 (2001); Abdullah Decl., ¶¶ 2-4; Bettcher Decl., ¶¶ 2-4; Borjon Decl., ¶¶ 2-3; Weide Decl. at ¶ 3; Teixeira Decl., ¶¶ 4-5.

Plaintiffs do not challenge the Faculty's arguments that these acts were in connection with an issue of public interest. Instead, they allege the Faculty's activity at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

the Student Union was illegal, and so cannot satisfy the first prong under subsection (e)(4) – or otherwise form the basis of an anti-SLAPP motion.

"This assertion of illegality is premature. The first step of the anti-SLAPP analysis is limited to whether a claim arises from protected activity. [The California Supreme Court] made it clear in Flatley that conduct must be illegal as a *matter of law* to defeat a defendant's showing of protected activity. The defendant must concede the point, or the evidence conclusively demonstrate it, for a claim of illegality to defeat an anti-SLAPP motion at the first step." City of Montebello v. Vasquez, 376 P.3d 624, 634 (2016) (emphasis in original).

Neither scenario exists here. The Faculty do not concede illegality; instead they dispute Plaintiffs' factual allegations and maintain their actions were protected. See Faculty Mot. Strike Reply at 6. Cases cited by Plaintiffs demonstrate the alleged criminality is far from conclusive. See, e.g., In re Wagner, 119 Cal. App. 3d 90, 104 (1981) ("Almost never could an entire audience be deemed to be encompassed in an assembly doing an unlawful act. The extent of the group and the membership therein are merely questions of fact.").

Where, as here, "a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits." Montebello, 205 Cal.Rptr.3d at 511(internal quotation marks omitted).

### 2. Probability of Success

#### a. Bane Act[9]

To prevail on a claim for violation of the Bane Act, a plaintiff must show that the defendant (1) interfered with plaintiff's rights secured by the laws or Constitution of the United States or laws or Constitution of the State of California; and (2) the interference was accompanied by actual or attempted threats, intimidation, or coercion. Sanchez v. City of Fresno, 914 F. Supp. 2d 1079, 1117 (E.D. Cal. 2012).

The Faculty provide affidavits stating that, while present at the Student Union (the basis for the Bane Act claim, see Opp. to Faculty Mot. Strike at 21-22), they did not engage in actual or attempted threats, intimidation, or coercion – nor did they encourage others to do so. Abdullah Decl. at ¶4; Bettcher Decl. at ¶ 4; Borjon Decl. at ¶ 3; Weide Decl. at ¶ 3; Teixeira Decl. at ¶ 5.

---

[9] Plaintiffs YAF and the Foundation dismissed their Bane Act claim against the Faculty defendants. Dkt. 45.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Even if all evidence submitted by Plaintiffs is credited, they fail to make a sufficient prima facie showing of facts to sustain a favorable judgment on this claim. Plaintiffs make no attempt to establish evidentiary support for the allegation the Faculty themselves engaged in threats, intimidation, or coercion at the Student Union. Instead, Plaintiffs rely on conclusory allegations in the FAC, and incorrectly suggest that the Court may not consider evidence outside the pleadings when ruling on an anti-SLAPP motion. See U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 971-73 (9th Cir. 1999) (special motion to strike, Section 425.16(b), coexists with federal procedural rules); Mindys Cosmetics, Inc. v. Dakar, 611 F.3d 590, 599-600 (9th Cir. 2010) (citing California authority that anti-SLAPP motion "operates like a demurrer or motion for summary judgment in reverse, requiring the plaintiff to demonstrate that he possesses a legally sufficient claim which is substantiated, that is, supported by competent, admissible evidence" and analyzing *evidence* submitted by plaintiff) (internal quotation marks and alterations omitted).[10]

Plaintiffs attach general evidence about the protest, in the form of videos and photographs—but fail to identify any protestor as a Faculty defendant. See FAC, Ex. 18. Plaintiffs contend, instead, that the Faculty can be liable under the Bane Act for the actions of other protestors. In support, they cite two criminal cases involving riot charges. Opp. Faculty Mot. Strike at 21. But the Bane Act case Plaintiffs do cite, Sanchez, dismissed the claim as to individual defendants where the plaintiff failed to connect each individual defendant to the intimidating nature of the interfering act. 914 F. Supp. 2d at 1118. Plaintiffs here have similarly failed to provide admissible evidentiary support for allegations of threats, intimidation, or coercion and, even if the Court were to consider the videos and photographs, have failed to connect any threats, intimidation, or coercion therein to the Faculty.[11]

---

[10] Cf. Makaeff v. Trump Univ., LLC, 736 F.3d 1180, 1183 (9th Cir. 2013) (Wardlaw and Callahan, JJ., concurring in denial of rehearing en banc) ("In other words, a reviewing court 'should grant the motion if, *as a matter of law*, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.'") (emphasis in original).

[11] In their response to the Faculty's evidentiary objections, Plaintiffs argue that the Court can consider the allegations in the verified FAC as evidence. See Dkt. 85 at 2 (citing Church of Scientology v. Wollersheim, 42 Cal.App.4th 628, 656 (1996)). Plaintiffs made no such arguments in opposing the Faculty's motion. See Opp. Mot. Faculty Strike at 18-23. There, for example, the Plaintiffs' statements are referred to as allegations sufficient to *state a claim* rather than admissible testimony to *support it*. See id. at 18. And for the essential element of "threats, intimidation, or coercion," Plaintiffs again speak of *allegations supported by* other admissible

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

The Faculty's motion to strike Claim 5 under the Bane Act is GRANTED.

### b. Aiding & Abetting a Tort

"California has adopted the common law rule for subjecting a defendant to liability for aiding and abetting a tort. Liability may [] be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third

---

evidence (videos, photos, and the Faculty's own statements). Id. at 20. Plaintiffs' argument that allegations in the FAC should be considered admissible under this second step is therefore untimely. Further, Plaintiffs' argument has been rejected by other California courts. See Hecimovich v. Encinal Sch. Parent Teacher Org., 203 Cal. App. 4th 450, 474 & n.8 (2012) (despite verified complaint based on plaintiff's personal knowledge, noting that "plaintiff's understanding of what can be considered in connection with the second step in the SLAPP analysis is [] erroneous[;] plaintiff cannot rely on his pleading at all, even if verified, to demonstrate a probability of success on the merits" and citing distinction between affidavits that state *evidentiary facts* compared to pleadings that allege *ultimate facts*); see also Wollersheim (stating general rule that verified pleadings do not suffice to make evidentiary showings as they "merely frame the issues to be decided"). Even if this Court follows Plaintiffs' interpretation of Wollersheim, they still have not met their burden. See also Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985) ("A verified complaint may be treated as an affidavit to the extent that the complaint is based on personal knowledge and sets forth facts admissible in evidence and to which the affiant is competent to testify."). Plaintiffs have not shown that the portions of the FAC relied on to demonstrate probable success on their Bane Act claim are based on personal knowledge and set forth facts admissible in evidence that the affiant is competent to testify. For example, Plaintiffs do not adequately indicate which of the Plaintiffs who verified the FAC have the requisite personal knowledge, and so could testify as to each of the allegations cited. While Karapanian appears to be the source of some allegations, see FAC, ¶¶ 181, 190, it is unclear whether more conclusory statements involving the Faculty's actions were within Karapanian's personal knowledge, see id., ¶¶ 196, 372-73; see also id., ¶¶ 182-83 (suggesting Karapanian may be relying on what she later saw in the video – which does not identify any Faculty – rather than personal knowledge); id. at ¶ 260 (citing video evidence – rather than mentioning Karapanian – to support allegation that certain Faculty were "linking arms with other persons to block access"); see also Opp. Mot. Faculty Strike at 20 (arguing allegation of threat, intimidation, and coercion is supported by videos, photos, and Faculty's own statements). Further, other statements relied on assert legal conclusions, or ultimate facts, rather than evidentiary facts. See FAC at ¶ 262-63.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

person." Casey v. U.S. Bank Nat'l Ass'n, 127 Cal. App. 4th 1138, 1144 (2005) (internal quotation marks omitted). "Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." Austin B. v. Escondido Union Sch. Dist., 149 Cal. App. 4th 860, 879 (2007) (internal quotation marks omitted).

In opposing the anti-SLAPP motion, Plaintiffs contend the Faculty aided and abetted the other protesters in committing a Bane Act violation and creating a public and private nuisance. Opp. to Faculty Mot. Strike at 22-23. Again they rely on allegations in their FAC that the Faculty organized and substantially encouraged and assisted the protest, and blocked access to the theatre. See id. But Plaintiffs do not attempt to offer evidentiary support in response to the Faculty's affidavits attesting that, although they may have posted on social media about the event, they did not organize the protest and their involvement was limited to observing the protest or briefly supporting students in the protest. Abdullah Decl., ¶¶ 3-4; Bettcher Decl., ¶¶ 2-4; Borjon Decl., ¶¶ 2-3; Weide Decl. at ¶ 2-3; Teixeira Decl., ¶¶ 3-5.

Plaintiffs do provide video and photographic evidence about the protest in general, but provide no indication how this evidence relates to the Faculty's actions. "[C]ausation is an essential element of an aiding and abetting claim, i.e., plaintiff must show that the aider and abettor provided assistance that was a substantial factor in causing the harm suffered." Am. Master Lease LLC v. Idanta Partners, Ltd., 225 Cal. App. 4th 1451, 1476, as modified (May 27, 2014) (internal quotation marks and citations omitted). In response to the Faculty's evidence they played less than a substantial role in causing other protesters' alleged torts (and did not themselves breach any duty to Plaintiffs)[12], Plaintiffs point only to allegations in their FAC.[13]

The Faculty's motion to strike Claim 6 for aiding and abetting a tort is GRANTED.[14]

---

[12] Whether the plaintiff must prove the defendant owed him a duty is disputed under California law, see id. at 567-68, but Plaintiffs here fail to show probable success on other factors, as well.

[13] Again, Plaintiffs' argument that their verified allegations are sufficient in response to an anti-SLAPP motion were untimely; however, even if considered admissible evidence, Plaintiffs here fail to indicate who has personal knowledge of relevant allegations to competently testify as such.

[14] To the extent Plaintiffs' state law claims were also brought against the Faculty in their official capacities, they are barred by the Eleventh Amendment. See Vasquez v. Rackauckas, 734 F.3d 1025, 1041 (9th Cir. 2013). The Faculty's objections to Plaintiffs' exhibits are OVERRULED as moot. Dkt. 83.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

### 3. Request for Discovery

In lieu of a more substantive opposition, Plaintiffs claim they need discovery to oppose the anti-SLAPP motion. Discovery can be allowed in the anti-SLAPP context in federal court. Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 845-47 (9th Cir. 2001). However, Wornick allows discovery pursuant to a Rule 56(d)-style request. See id.[15] Rule 56(d) requires a nonmoving party to support "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." In order to obtain a continuance for discovery, an opposing party must make "(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." Emp'rs Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1129 (9th Cir. 2004) (internal quotation marks omitted). In other words, "[a] party requesting a continuance pursuant to [now Rule 56(d)] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." Tatum v. San Francisco, 441 F.3d 1090, 1100 (9th Cir 2006).

Plaintiffs failed to do any of this.

### IV. CONCLUSION

Claims 1 and 2 against the Administrators regarding the Third Securities Fee Policy are DISMISSED with leave to amend. Claims 1 and 2 regarding the previous policy remain. Claim 3 against the Administrators and Faculty in their official and personal capacities is DISMISSED with prejudice. Claim 4 against the Administrators and Faculty in their official capacities is DISMISSED with leave to amend; however, Claim 4 against the Administrators and Faculty in their personal capacities is DISMISSED with prejudice on the basis of qualified immunity. Claims 5 and 6 against the Faculty in their official capacities are barred by the Eleventh Amendment and are DISMISSED with prejudice. Claims 5 and 6 against the Faculty in their individual capacities are STRICKEN with leave to amend.

An amended complaint consistent with this order must be filed and served no later than January 20, 2017. The Court does not grant leave to add new defendants or new claims. Leave to add new defendants or new claims must be sought by a separate, properly noticed motion.

IT IS SO ORDERED.

---

[15] The current Rule 56(d) was, at the time, Rule 56(f).